IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JOLIE CANNON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No.: |
| | ) | |
| DOTHAN CITY SCHOOLS, | ) | JURY DEMAND |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

### I.   INTRODUCTION

1. This is an action alleging disability discrimination in violation of Title I of the Americans with Disabilities Act, as amended by the Americans with Disabilities Act Amendments Act of 2008, ("ADA"), 42 U.S.C. 12101 et. seq., brought by Plaintiff Jolie Cannon. Plaintiff is a qualified individual with a disability as defined under the ADA. Plaintiff alleges that Defendant discriminated against her based on her disability, Defendant's perception of Plaintiff as disabled and her record of a disability in violation of the ADA. Plaintiff seeks injunctive relief, equitable relief, compensatory damages, and reasonable attorney fees and costs.

### II.   JURISDICTION

2. This Court has jurisdiction in accordance with 28 U.S.C. § 1331. Venue is proper in the Northern District of Alabama, Southern Division pursuant to 42 U.S.C.

§1391 as well as Title VII's choice-of-venue provision, 42 U.S.C. §2000e-5(f)(3), which provides that "Title VII actions may be brought … in any judicial district in the State in which the unlawful employment practice is alleged to have been committed." The ADA incorporates Title VII's venue provision, see 42 U.S.C. § 12117(a) (incorporating by reference Title VII's venue provision for claims brought under the ADA).

3.     Plaintiff has fulfilled all conditions precedent to the institution of this action under Title I of the ADA. Plaintiff timely filed her charge on January 14, 2025, within 180 days of the occurrence of the last discriminatory act and the Equal Employment Opportunity Commission investigated. The EEOC issued a Right to Sue Notice on March 21, 2025.

**III.    PARTIES**

4.     Plaintiff, Jolie Cannon, is an individual over the age of 19 years and is a resident of Alabama. Plaintiff is an individual with a disability and is regarded by Defendant as disabled. Despite this disability, with or without reasonable accommodation, Plaintiff could perform the essential functions of her position. Consequently, Plaintiff is a qualified individual as defined under the ADA.

5.      Defendant Dothan City Schools (hereinafter "Defendant") is an "employer" as defined under the ADA and is subject to compliance with 42 U.S.C. 12111(5). Venue is proper pursuant to 28 U.S.C. § 1391.

## IV.  FACTUAL ALLEGATIONS

6. Plaintiff has worked as a teacher for Dothan High School since 1999.

7. Plaintiff has had a disability under the ADA, Type 1 Diabetes, since 1998. Defendant also perceives Plaintiff as disabled, and Plaintiff has a record of a disability.

8. With Type 1 Diabetes, an autoimmune disease, the immune system mistakenly attacks and destroys the insulin-producing cells, known as beta cells, in the pancreas. When the beta cells are destroyed, the body can no longer produce sufficient insulin to regulate blood sugar, leading to high blood sugar.

9. Plaintiff must inject insulin to regulate her blood sugar level; however, injecting too much insulin can cause her blood sugar to drop dangerously low. Plaintiff must constantly monitor her blood sugar and take continuous steps to balance her blood sugar twenty-four hours a day.

10. Over Plaintiff's many years as a teacher, the medical devices she used to control her blood sugar have evolved from pricking her fingers to draw blood to measure her glucose levels and giving herself shots five times a day to wearing an insulin pump and a Continuous Glucose Monitor (CGM) to continuously manage her diabetes.

11. Plaintiff now relies on an insulin pump to administer insulin, and a Continuous Glucose Monitor ("CGM") to read her blood sugar levels, alerting her pump to

suspend the insulin flowing into her body when her sugar drops too low or to increase insulin when her sugar goes too high.

12.     These highly sophisticated electronic medical devices function in tandem as an artificial pancreas to replace Plaintiff's non-functioning pancreas.

13.     Plaintiff's Certified Registered Nurse Practitioner (CRNP) explained in a letter to Defendant that Plaintiff "requires WiFi connection for her devices to function in regards to her insulin pump and continuous glucose monitor app updates at all times every day so there is no electronic disruption with her closed loop system/insulin delivery system."

14.     There are numerous reasons why Plaintiff must regularly use the internet to properly manage her diabetes through these devices. First, Plaintiff regularly needs to download and install updates for her devices to properly work, as they are constantly updating. These devices hook to Plaintiff's cell phone and that is how she installs the updates. Second, Plaintiff must also sync to a system called "Glooko" which sends information to her doctor's office to monitor and update the settings on her insulin pump. Third, whenever Plaintiff has technical issues with her pump or CGM, the device has to send the log files to the product's customer care department. Fourth, Plaintiff remotely shares her CGM's readings with her family in case there is an emergency situation. Fifth, Plaintiff's doctor wanted to put Plaintiff on a different pump, but wanted to monitor her 'live' for numerous medical reasons

before placing her on that new pump.

15. In order for Plaintiff's devices to work effectively, she must have access to a strong and stable internet data connection through her cell phone.

16. While at work at Dothan High School, Plaintiff found that she was not able to obtain a sufficient cellular data signal from her wireless service for her devices to interface with the internet.

17. As a result, there have been occasions when Plaintiff's CGM did not read her high blood glucose and did not provide the extra insulin she needed, causing her sugar to continue to rise, or when she had low blood glucose and the insulin delivery did not suspend, causing her sugar to continue to drop. Anytime Plaintiff's insulin goes out of the normal range, she risks suffering from a medical emergency.

18. Uncontrolled blood sugar fluctuations caused by the devices' inability to access the internet for key updates or information downloads interfere with Plaintiff's ability to perform the essential functions of her job.

19. If Plaintiff had access to her school's Wi-Fi connection throughout the school building, she would not need to rely on her cell service data connection to effectively utilize her CGM and related devices to appropriately manage her disability.

20. Providing access to the school's Wi-Fi connection throughout the building would be a reasonable accommodation for Plaintiff's disability that would enable her to perform the essential functions of her job.

21. Since 2023 Plaintiff has made numerous requests for the reasonable accommodation of access to the school's Wi-Fi to her school Principal, Dr. Keith Bland, the Superintendent, Dennis Coe, the Dothan City School Technology Director, Jeremy Green, and the School Board, which is composed of seven people.

22. However, Plaintiff's numerous requests to utilize the school's Wi-Fi have consistently been denied by Bland, Coe, Green and the Board.

23. Around the end of June 2024, Defendant provided Plaintiff with a mobile hotspot configured only to her CGM and Glooko.

24. However, when Plaintiff tried to use the hotspot with her medical devices, the hotspot did not work possibly due to its configuration to only her CGM and Glooko.

25. Plaintiff informed Principal Bland that the hotspot did not work, and Technology Director Green checked the hotspot, but the problem was not resolved and Plaintiff continued to be denied the effective and appropriate use of her diabetic medical devices since she did not have the necessary stable and strong data connection.

26. Defendant maintained that it could not provide Plaintiff with a direct Wi-Fi connection due to privacy concerns. In response, Plaintiff obtained information from an outside information technology specialist about how to set up a partitioned Wi-Fi that would not allow Plaintiff or any other user of this partitioned Wi-Fi to have

access to the Wi-Fi designated for the school grades and other private information.

27.     Around April 2025, Plaintiff specifically explained to the school how it could set up secondary Wi-Fi isolated from the main Wi-Fi that would allow Plaintiff and other diabetics to use it without risking penetration into the regular school Wi-Fi.

28.     To date, Defendant has refused to set up the partitioned Wi-Fi and has failed to provide an explanation as to why it has denied this method of reasonably accommodating Plaintiff.

29.     Defendant has refused to further engage in the interactive process with Plaintiff to come up with a reasonable solution that works in a manner to allow her to control her blood sugar at school.

30.     The accommodation Plaintiff seeks is reasonable under the Americans with Disabilities Act (ADA) and Defendant has failed to state any way that Plaintiff's accommodation request poses an undue hardship on the school.

31.     In denying Plaintiff reasonable accommodations because of her disability, Defendant intentionally discriminated against Plaintiff on the basis of her disability, in complete disregard for her federally protected rights.

32.     As a result of Defendant's actions and inactions, Plaintiff has suffered harm, including but not limited to loss of employment opportunities and other benefits and conditions of employment.

33.     Additionally, Plaintiff has suffered injury including pain, humiliation,

emotional distress, mental anguish and suffering, and loss of enjoyment of life.

## V. CAUSES OF ACTION

### A. COUNT I – Americans with Disabilities Act – Failure to Accommodate

34. Plaintiff is a person with a disability, as that term is defined by the Americans with Disabilities Act. Plaintiff also has a record and history of a disability. See 42 U.S.C. 12102.

35. Defendant is a covered entity and an employer in accordance with 42 U.S.C. 12111(5)

36. Plaintiff is a qualified individual as defined under the ADA.

37. Despite Plaintiff's disability, with or without reasonable accommodation, she is able to perform the essential functions of the job. See 42 U.S.C. 12111.

38. Under the ADA, Defendant is prohibited from discriminating against Plaintiff, a qualified individual, on the basis of disability. 42 U.S.C. 12112(a).

39. The ADA's protections against discrimination also prohibit utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability. 42 U.S.C. 12112(b)(3)(A).

40. Defendant violated the ADA by failing to provide Plaintiff with reasonable accommodations. 42 U.S.C. 12112(b)(5)(A).

41. Defendant refused to engage in the interactive process in response to Plaintiff's requests for accommodations.

42. Defendant has failed to show the accommodations she requested would have caused an undue hardship and Plaintiff's requested accommodations would not have imposed any undue hardship on the operation of Defendant's school.

43. Said discrimination, including the refusal to provide a reasonable accommodate Plaintiff, was done maliciously, willfully, and with reckless disregard for the rights of Plaintiff.

44. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for backpay, declaratory judgment, injunctive relief, and the damages sought in this complaint are her only means of securing adequate relief.

45. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

## VI. PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1. Issue a declaratory judgment that the employment practices, policies, procedures, conditions, and customs that led to the discrimination by Defendant violate Plaintiff's rights as secured by the Americans with Disabilities Act, 42 U.S.C. 12101.

2. Specifically, require Defendant to change its policies to allow insulin dependent diabetics such as Plaintiff and other faculty and students to be allowed partitioned access to the school's Wi-Fi so that their insulin administering and monitoring devices work in the most efficient manner possible for their health and safety.

3. Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request, from continuing to violate the ADA.

4. Enter an Order requiring the Defendant to make Plaintiff whole by awarding Plaintiff compensatory and nominal damages.

5. Plaintiff further prays for such other and further relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorney's fees and expenses incurred by this litigation.

6. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged in this suit, and this action for injunctive, declaratory and other relief is his only means of securing adequate relief.

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.**

                          Respectfully submitted,

                          /s/ Jon C. Goldfarb
                          Jon C. Goldfarb (asb-5401-f58j)
                          L. William Smith (asb-8660-a61s)
                          Christina M. Malmat (asb-1214-y44q)

                                                  Counsel for Plaintiff

**OF COUNSEL:**
WIGGINS, CHILDS, PANTAZIS, FISHER,
& GOLDFARB LLC.
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Telephone No.: (205) 314-0500
Facsimile No.: (205) 254-1500